UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

KEVIN DENNARD HUBERT                         MOVANT/DEFENDANT

v.                                           CIVIL ACTION NO.  5:06CV-000P10-R
                                             CRIMINAL ACTION NO. 5:99CR-00018-R

UNITED STATES OF AMERICA                     RESPONDENT/PLAINTIFF

MEMORANDUM OPINION

Movant, Kevin Dennard Hubert, filed a *pro se* motion to vacate, set aside or correct his

sentence pursuant to 28 U.S.C. § 2255.  On initial review, it appeared to the Court that Hubert's

entire basis for challenging his conviction and sentence was based on the recent United States

Supreme Court decision of *United States v. Booker*, 543 U.S. 220 (2005).  Accordingly,

by Memorandum Opinion and Order entered June 9, 2006, the Court concluded that the motion

should be denied as time-barred but provided Hubert with an opportunity to respond (DN 3).

Hubert filed a response on July 13, 2006, (DN 4), in which he clarifies that he is

attacking his sentence on two grounds: 1) that it was imposed in violation of *Booker;* and 2)

"that ground two of his § 2255 is based on 'jurisdictional grounds' that are not subject to

AEDPA [to wit]  . . . [he] was sentenced to a conviction under 18 U.S.C. § 924(c)(1)(C)(I),

which carries a 'consecutive 25-years' without being placed on notice of such a charge [in his

indictment] . . . rendering the subsequent sentence unconstitutional for lack of jurisdiction."

In his response, Hubert also requests the Court to hold his case in abeyance pending the

outcome of *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), *cert. granted,* 126 S. Ct.

2352; 165 L. Ed. 2d 278; 2006 U.S. LEXIS 4351 (U.S. June 5, 2006) ( No. 05-9222), a case in

which the United States Supreme Court recently granted a writ of certiorari.  For the reasons that

follow, Hubert's request for an abeyance will be denied and his § 2255 motion dismissed.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Hubert was indicted and charged with violations of 18 U.S.C. § 2213(d), armed bank

robbery, and 18 U.S.C. § 924(c)(1), use of a firearm during a crime of violence,

(5:99-CR-00018, DN 2).  The Court appointed a federal defender to represent Hubert in

connection with the criminal proceedings against him.  Hubert entered a voluntary plea of guilty

(5:99-CR-00018, DN 25).  As part of his plea agreement Hubert acknowledged that he was:

> [A]ware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence
> imposed.  Acknowledging all this, defendant knowingly waives the right to appeal
> any sentence within the maximum provided in the statute(s) of conviction and the
> manner in which that sentence was determined on the grounds set forth in 18 U.S.C.
> § 3742 or on any ground whatever, in exchange for the concessions made by the
> United States in this plea agreement.  **Defendant also waives his right to challenge
> his sentence and the manner in which it was determined <u>in *any* collateral attack</u>,**
> including, but not limited to, a motion brought under 28 U.S.C. § 2255.

*Id.* (emphasis added).  On September 17, 2001, Hubert was sentenced by the Court to 440

months imprisonment to be followed by a period of supervised release.  Hubert did not challenge

his conviction or sentence on direct appeal.  Instead, he filed a *pro se* motion to vacate, set aside

or correct his sentence pursuant to § 2255 in this Court on January 10, 2006 (DN 1).

## II.  ANALYSIS

Section 2255 provides for a one-year limitations period, which shall run from the latest

of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by
> governmental action in violation of the Constitution or laws of the
> United States is removed, if the movant was prevented from making
> a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by
> the Supreme Court, if that right has been newly recognized by the

Supreme Court <u>and made retroactively applicable to cases on collateral review</u>; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*See* § 2255 (emphasis added).

As previously stated, Hubert did not pursue a direct appeal of his sentence. " [A]n unappealed district court judgment of conviction becomes 'final' ten days after the entry of judgment. . . ." *Sanchez-Castellano v. United States*, 358 F.3d 424, 425 (6th Cir. 2004). Thus, the one-year period began running in September of 2001. Since Hubert did not file the instant motion until January of 2006, the motion will be time-barred unless Hubert can satisfy one of the other three sections above. Because Hubert's claims raise distinct issues vis-a-vis the statute of limitations, the Court will analyze them separately.

**A.     *Booker* Challenge**

Hubert first argues that his motion is timely under sections 2 & 3 because *Booker* is a new right recognized by the Supreme Court that should be applied retroactively to all cases on collateral review. Despite Hubert's argument for retroactivity, the Sixth Circuit Court of Appeals has specifically concluded that "*Booker's* rule does **not** apply retroactively in collateral proceedings." *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005) (emphasis added).

In response to this Court's show cause order, Hubert acknowledges the holding in *Humphress*, but requests the Court to hold his motion in abeyance until the Supreme Court issues an opinion in the case of *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), *cert. granted,* 126 S. Ct. 2352; 165 L. Ed. 2d 278; 2006 U.S. LEXIS 4351 (U.S. June 5, 2006) ( No. 05-9222). Hubert claims that the Supreme Court's decision in *Burton* will finally settle the

3

question of whether *Booker* is retroactive, and therefore, will impact the outcome of his

§ 2255 motion.

  1.  **Summary of *Burton***

In order to understand Hubert's arguments, it is necessary to briefly summarize the

procedural and factual history surrounding the *Burton* case.  A Washington state court jury

convicted Burton of rape in the first degree, robbery in the first degree, and burglary in the first

degree in 1994.  *Burton*, 142 Fed. Appx. at 298.  The trial judge sentenced Burton outside of

Washington's guidelines after finding that the standard sentence was too lenient, that Burton's

actions amounted to "deliberate cruelty," and that Burton demonstrated "sophistication and

planning of the sort that makes the defendant a significantly different offender" pursuant to

Wash. Rev. Code § 9.94A.390.  Petition for Cert. at 4, *Burton*, 142 Fed. Appx. 297 (hereinafter

"Petition for Cert.").  Burton pursued a direct appeal of his conviction and sentence.

The United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000),

before Burton's state conviction and sentence became final.  In *Apprendi*, the Court held that

"other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond

the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt." *Id.* at 490.  Thus, Burton argued to the Washington Supreme Court that his exceptional

sentence was imposed in violation of *Apprendi*, an argument ultimately rejected by that court.

After exhausting his state court appeals, Burton filed a habeas petition in federal court

arguing that his "sentence in excess of the top range set by statute violated due process when

factors used to support it were not submitted to a jury and proven beyond a reasonable doubt."

*Id.* at 5.  The district court denied Burton's petition, and he appealed to the Ninth Circuit.  While

4

Burton's case was on appeal to the Ninth Circuit, the United States Supreme Court issued its opinion in *Blakely v. Washington*, 542 U.S. 296 (2005). In *Blakely*, the Court explained that under *Apprendi* the "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Id.* at 303-04. Burton argued that both *Apprendi* and *Blakely* were violated in his case and that his sentence should be vacated.

The Ninth Circuit rejected Burton's *Apprendi* argument after finding that Burton's "sentence on any individual count, and the total sentence imposed does not exceed the statutory maximum of life imprisonment." *Burton*, 142 Fed. Appx. at 299. The Ninth Circuit did not address whether the sentence may have nonetheless violated *Blakely* because it did not believe *Blakely* could be applied retroactively to cases on collateral review. *Id.*

Burton sought a writ of certiorari from the United States Supreme Court. Burton's petition presented two questions: "(1) Is the holding in *Blakely* a new rule or is it dictated by *Apprendi*; [and] (2) If *Blakely* is a new rule, does its requirement that facts resulting in an enhanced statutory maximum be proved beyond a reasonable doubt apply retroactively?" Petition for Cert. at i. The Supreme Court granted Burton's petition on June 5, 2006.

## 2.    Relationship Between *Booker* and *Blakey*

The viability of Hubert's § 2255 motion rests on *Booker,* not *Blakely,* and Burton states in his petition that he "is not asking [the Supreme Court] to address whether *Booker* announced a new rule. The only question Mr. Burton asks this Court to address is whether the holding of *Blakely* is a new rule." Petition for Cert. at 12. However, due to the interplay between *Booker* and *Blakely*, it is likely that if the Supreme Court addresses the retroactivity of *Blakely* in *Burton*,

5

its analysis and holding will be directly applicable to *Booker.*

In *Booke*r, decided shortly after *Blakely,* the Supreme Court explicitly held that:

*Blakely* applies to the [Federal] Sentencing Guidelines. We recognize, as we did in *Jones*, *Apprendi*, and *Blakely*, that in some cases jury factfinding may impair the most expedient and efficient sentencing of defendants. But the interest in fairness and reliability protected by the right to a jury trial--a common-law right that defendants enjoyed for centuries and that is now enshrined in the Sixth Amendment --has always outweighed the interest in concluding trials swiftly. . . Accordingly, we reaffirm our holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.

*Booker*, 534 U.S. at 244.

Thus, if the Supreme Court holds that *Blakely* is retroactive, Hubert may well be correct that it would logically follow that *Booker* must also be applied retroactively.

### 3.      An Abeyance Is Not Warranted In Hubert's Case

What is far from certain, however, is whether the Supreme Court will actually reach this second question in *Burton* or whether its decision as to the first question will be dispositive, leaving for another day the question of retroactivity. Furthermore, even if the Supreme Court holds that *Booker* is retroactive in *Burton*, it does not appear that it would impact the outcome of Hubert's case.

As already indicated, Hubert entered into a plea agreement in which he "**waive[d] his right to challenge his sentence and the manner in which it was determined in *any* collateral attack**." "Plea agreements, the Supreme Court has long instructed, may waive constitutional or statutory rights then in existence as well as those that courts may recognize in the future." *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005).

"The Court has explained that where developments in the law later expand a right that a

defendant has waived in a plea agreement, the change in law does not suddenly make the plea

involuntary or unknowing or otherwise undo its binding nature.  A valid plea agreement, after

all, requires knowledge of existing rights, not clairvoyance." *Id.* "'Absent misrepresentation or

other impermissible conduct by state agents, . . . a voluntary plea of guilty intelligently made in

the light of the then applicable law does not become vulnerable because later judicial decisions

indicate that the plea rested on a faulty premise.'" *Id.* (quoting *Brady v. United States*, 397 U.S.

742, 757 (1970) (holding that a defendant could not claim his plea was involuntary by relying on

a Supreme Court decision that declared unconstitutional a provision relevant to his criminal

sentence)).

In *Bradley*, the movant argued that his sentence was inconsistent with the Supreme

Court's decision in *Booker* and urged the Sixth Circuit to remand his case to the district court for

resentencing.  The Sixth Circuit rejected this argument after finding that as part of his plea

agreement Bradley had waived his right to attack his sentence on appeal, and therefore, had no

right to make a *Booker* challenge.  The Sixth Circuit explained the basis for its decision:

> In this case, Bradley's plea agreement functioned in much the same way as Brady's
> plea agreement in *Brady v. United States*.  Brady pleaded guilty to a life sentence
> in order to avoid a death sentence under 18 U.S.C. § 1201(a). On learning that the
> Supreme Court had invalidated this death-penalty provision in *United States v.
> Jackson*, 390 U.S. 570, 20 L. Ed. 2d 138, 88 S. Ct. 1209 (1968), because it "made
> the risk of death the price of a jury trial," *Brady*, 397 U.S. at 746, Brady claimed
> that "his plea of guilty was not voluntarily given because § 1201(a) operated to
> coerce his plea." *Id.* at 744.  The Supreme Court rejected Brady's argument.
> ***Here, too, Bradley asks us to invalidate his sentence because he did not know
> when he pleaded guilty that the Supreme Court would later declare the
> Sentencing Guidelines to be advisory in Booker. And here, too, the change in law
> cannot undo his plea.***
>  . . .
>
> Plea bargains always entail risks for the parties--risks relating to what evidence
> would or would not have been admitted at trial, risks relating to how the jury would

have assessed the evidence and <u>risks relating to future developments in the law</u>. The salient point is that a plea agreement allocates risk between the two parties as they see fit.  If courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, they threaten to reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) with the knowledge that the agreement will be immune from challenge on appeal.  *See Young v. United States*, 124 F.3d 794, 798 (7th Cir. 1997)("If the law allowed the defendant to get off scot free in the event the argument later is shown to be a winner, then the defendant could not get the reduction in the first  place.  Every plea would become a conditional plea, with the (unstated) condition that the defendant obtains the benefit of favorable legal developments, while the prosecutor is stuck with the original bargain no matter what happens later. That approach destroys the bargain, and the prospect of such an outcome will increase the original sentence.").

*Id.* at 463-65 (emphasis added).

Thus, even if the Supreme Court decides *Burton* in a manner that requires courts to apply *Booker* retroactively, it would not change the fact that Hubert has waived his right to pursue a collateral attack of his sentence.  Accordingly, this Court does not believe that holding Hubert's case in abeyance pending a decision in *Burton* is judicially prudent.  It would only serve to delay the inevitable, a dismissal of Hubert's *Booker* claim.

As such, the Court concludes that it must deny Hubert's request to hold his *Booker* claim in abeyance.

**B.      Jurisdictional Claim as Related to the Charges in the Indictment**

Hubert's second claim is that the Court lacked the jurisdiction to sentence him for a violation of 18 U.S.C. § 924(c)(1)(C)(I) because his indictment charged him with only a violation of § 924(c)(1).[1]  Hubert argues that because this claim challenges the Court's

---

[1]The relevant statutory sections are set out below.

§ 924.  Penalties.
(c)(1) (A) Except to the extent that a greater minimum sentence is otherwise provided by this

jurisdiction, AEDPA's statute of limitations does not apply.  Although not cited by Hubert, the

Court presumes that Hubert bases this argument on Federal Criminal Rule of Procedure 12(b)(3),

which states that "at any time *while the case is pending*, the court may hear a claim that the

indictment or information fails to invoke the court's jurisdiction or state an offense." (emphasis

added).  This Rule, however, does not provide a defendant with an infinite amount of time to

challenge jurisdiction as Hubert seems to argue.  To the contrary, the jurisdictional challenge

must be made "while the case is pending."  "An action is 'pending' . . . [only] until a final

judgment is rendered and appeal or reconsideration is no longer an option." *Deerwester v.*

*Carter*, 26 F. Supp. 2d 1080, 1082 (C.D. Ill. 1998).

     Thus, Hubert could have raised the jurisdictional argument for the first time on appeal.

*See United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999).  He cannot, however, rely on

---

subsection or by any other provision of law, any person who, during and in relation to any
crime of violence or drug trafficking crime (including a crime of violence or drug trafficking
crime that provides for an enhanced punishment if committed by the use of a deadly or
dangerous weapon or device) for which the person may be prosecuted in a court of the
United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses
a firearm, shall, in addition to the punishment provided for such crime of violence or drug
trafficking crime--

   (i) be sentenced to a term of imprisonment of not less than 5 years;

   (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than
7 years; and

   (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than
10 years.

   (B) If the firearm possessed by a person convicted of a violation of this subsection--

   (i) is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon,
the person shall be sentenced to a term of imprisonment of not less than 10 years; or

   (ii) is a machinegun or a destructive device, or is equipped with a firearm silencer or
firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30
years.

   (C) In the case of a second or subsequent conviction under this subsection, the person
shall--

   (i) be sentenced to a term of imprisonment of not less than 25 years; and

   (ii) if the firearm involved is a machinegun or a destructive device, or is equipped with
a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

Rule 12(b)(3) to salvage an otherwise time-barred § 2255 motion.  And, despite Hubert's arguments otherwise, § 2255 does not exempt jurisdictional challenges from AEDPA's statute of limitation provisions.  *See* 28 U.S.C. § 2255.  Because this action became final for the purposes of AEDPA in September 2001, the instant motion came too late.

Furthermore, while the one-year limitations period is not jurisdictional and is subject to the doctrine of equitable tolling, the Sixth Circuit repeatedly has cautioned that equitable tolling should be applied "sparingly."  *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001).  A petitioner bears the burden of showing that he is entitled to equitable tolling.  *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).  Hubert has not alleged any facts or circumstances that would justify the application of equitable tolling in this case.  He appears simply to have labored under the mistaken belief that because his claim was jurisdictional in nature, AEDPA's statute of limitations would not apply, providing him with an infinite amount of time in which to file his § 2255 claim.  However, ignorance of the law alone cannot support the application of equitable tolling.  *See Allen*, 366 F.3d at 403.  Thus, the Court concludes that it must dismiss Hubert's claim because it is time-barred.

Even if this claim was not time-barred it would still be subject to dismissal on alternative grounds.  "The general rule is that the sufficiency of an indictment cannot be questioned on a motion under Section 2255 unless it is so defective on its face as not to charge an offense under any reasonable construction."  *Eisner v. United States*, 351 F.2d 55, 56 (6th Cir. 1965).

Hubert's indictment charges:

<u>Count 1</u>
On or about the 19th day of June 1998, in the Western District of Kentucky, McCracken County, Kentucky, **KEVIN DENNARD**, defendant herein, by force, violence, and intimidation, took from bank employees approximately $3,700 in

money belonging to, and in the care, custody, control, management, and possession of the Banterra Bank, 3151 Jackson Street, Paducah, Kentucky, the deposits of which were then and there insured by the Federal Deposit Insurance Corporation, and in committing such offense, the defendant assaulted and put in jeopardy the life of another person by means of a dangerous weapon, to wit, a handgun, the exact description of which is unknown to the grand jury.

In violation of Title 18, United States Code, Section 2113(d).

<u>Count 2</u>

On or about the 19th day of June 1998, in the Western District of Kentucky, McCracken County, Kentucky, **KEVIN DENNARD**, defendant herein used and carried a firearm during and in relation to a crime of violence, to wit, the armed robbery of the Banterra Bank, 3151 Jackson Street, Paducah, Kentucky, in violation of Title 18, United States Code, Section 2113(d), as described in Count 1 of this Indictment.

In violation of Title 18, United States Code, Section 924(c)(1).

(5:99-CR-00018, DN 2).  Clearly, Hubert's indictment charged an offense, and therefore, is not subject to collateral attack under § 2255.  *See United States v. Boyd*, 259 F. Supp. 2d 699, 708 (W.D. Tenn. 2003) (citing *Eisner* and finding that "an indictment only affects the Court's jurisdiction if it is so insufficient that it completely fails to charge an offense.").

Moreover, in *United States v. Perry*, 438 F.3d 642, 651-52 (6th Cir. 2006), the Sixth Circuit upheld an indictment on direct appeal under circumstances remarkably similar to the case at bar:

 Perry next charges that it was plain error, in violation of the Sixth Amendment, for the district court to sentence him to the twenty-five year consecutive sentence pursuant to 18 U.S.C. § 924(c).  Perry argues that his sentence of twenty-five years on count two must be vacated because he was only indicted by the grand jury for violations of 18 U.S.C. § 924(c)(1)(A)(ii), which carries a term of seven years imprisonment, and not under 18 U.S.C. § 924(c)(1)(C)(I), which states that for a second or subsequent conviction, a defendant shall be sentenced to a twenty-five-year term of imprisonment. Perry concludes that the indictment's failure to include an essential element -- namely his second conviction pursuant to § 924(c) -- "means that [Perry] had no notice that he could be convicted of violating 18 U.S.C. § 924(c)(1)(C)." . . . We have previously rejected arguments similar to Perry's instant challenge.  In *United States v. Davis*, 306 F.3d 398 (6th Cir. 2002), the district court sentenced defendant to seven years for the first conviction (count two of defendant's indictment), and, pursuant to § 924(c)(1)(C)(I), the court sentenced defendant to

11

twenty-five years for the second conviction (count four of the indictment), *id.* at 411. Although, on appeal, defendant argued that his twenty-five year sentence on count four must be vacated because he was indicted by the grand jury only for violations of 18 U.S.C. § 924(c)(1)(A)(ii), we disagreed and affirmed. *Id.* at 411-12. In doing so, we relied on the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), to conclude that the presence of a prior conviction enabled the district court to increase defendant's sentence to twenty-five years, and § 924(c)(1)(C)(I) did not need to be pleaded in the indictment. *Davis*, 306 F.3d at 411-12. . . . The indictment in this case therefore provided defendant with adequate notice of the crimes for which he was charged and was not constitutionally defective.

*Id.* at 651-52. Thus, even if Hubert's claims as related to the indictment were not time-barred, they still could not survive dismissal.

## C.    Other Claims.

Although not entirely clear, it also appears that Hubert is alleging ineffective assistance of counsel based on his counsel's alleged failure to advise him that pleading guilty to a charge under § 924(c)(1)(C)(I) would subject him to a twenty-five-year term of imprisonment. Again, however, this claim comes too late. Hubert had until September 2002 (a year after his judgment became final) to file a § 2255 motion. All the facts that Hubert needed to make this challenge should have been available to him immediately after sentencing: he knew what the indictment charged, he knew what his attorney had advised him in relation to his guilty plea, and he knew the length of time he had been sentenced. Hubert has not alleged that the government impaired his ability to bring this claim or any of the other factors that would provide for a longer period under AEDPA. Moreover, Hubert has failed to allege any fact sufficient to support the application of equitable tolling. As such, this claim is time-barred.

Finally, Hubert also appears to be challenging the Court's authority to impose a period of supervised release. Hubert argues, without citation to any authority, that this claim is also not subject to AEDPA's statute of limitations. AEDPA does not exempt claims related to supervised

12

release from its statute of limitations, and here too Hubert has not offered any explanation why he did not timely pursue this claim.  As such, the Court concludes that this claim is also time-barred.

### III.  CERTIFICATE OF APPEALABILITY

In the event that Hubert appeals this Court's decision, he is required to obtain a certificate of appealability.  28 U.S.C. § 2253(c)(1)(b); Fed. R. App. P. 22(b).  A district court must issue or deny a certificate of appealability and can do so even though the movant has yet to make a request for such a certificate.  *Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) ("Whether the district judge determines to issue a COA along with the denial of a writ of habeas corpus or upon the filing of a notice of appeal, the district judge is always required to comply with § 2253(c)(2) & (3) by 'indicat[ing] which specific issue or issues satisfy the showing required,' 28 U.S.C. § 2253(c)(3), *i.e.*, a 'substantial showing of the denial of a constitutional right.' 28 U.S.C. § 2253(c)(2).").

When a district court denies such a motion on procedural grounds without addressing the merits of the motion, a certificate of appealability should issue if the movant shows "that jurists of reason would find it debatable whether the [motion] states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

When a plain procedural bar is present and the district court is correct to invoke it to dispose of the matter, a reasonable jurist could not conclude either that the court erred in dismissing the motion or that the movant should be allowed to proceed further.  *Slack*, 529 U.S. at 484.  In such a case, no appeal is warranted.  *Id.*  This Court is satisfied that no jurists of

13

reason could find its procedural ruling to be debatable.  Thus, no certificate of appealability is warranted in this case.

The Court will enter an order consistent with this memorandum opinion.

Date:

cc:      Movant, *pro se*
         U.S. Attorney

4413.008

14